IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2024 Session

## DEBORAH RUSSELL v. HOUSEHOLD MORTGAGE SERVICES, INC. ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 18-0669-II      Don R. Ash, Senior Judge**

_____

**No. M2023-00696-COA-R3-CV**

_____

In this appeal, Appellant does not offer any argument as to the trial court's final order, and among other technical issues, fails to properly cite to her appendix or to the record. Because Appellant has failed to comply with the requirements set out in Rules 27 and 28 of the Tennessee Rules of Appellate Procedure and Rule 6 of the Rules of the Court of Appeals of Tennessee, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, and CARMA DENNIS MCGEE, JJ., joined.

Deborah Russell, Nashville, Tennessee, Pro se.

Jonathan Cole, Nashville, Tennessee, for the appellees, Household Mortgage Services.

John S. Hicks, Nashville, Tennessee, for the appellees, Baker, Donelson, Bearman, Caldwell & Berkowitz (Nashville).

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is the fourth in a series of appeals involving these parties. *See **Russell v. Household Mortg. Servs.** (**Russell I**)*, No. M2008-01703-COA-R3-CV, 2012 WL 2054388 (Tenn. Ct. App. June 7, 2012); ***Russell v. HSBC Mortg. Servs., Inc.** (**Russell II**)*, No. M2015-00197-COA-R3-CV, 2016 WL 1588091 (Tenn. Ct. App. Apr. 15, 2016), *perm.*

*app. denied* (Sept. 22, 2016); ***Russell v. HSBC, Inc.*** (***Russell III***), No. M2020-01181-COA-R3-CV, 2022 WL 17452481 (Tenn. Ct. App. Dec. 6, 2022). In this Opinion, we focus only on those details strictly necessary for consideration of the issues before us.

The underlying dispute stems from the refinancing of Plaintiff/Appellant Deborah Russell's mortgage in 2000. In 2004, Ms. Russell filed an adversary proceeding against Defendant/Appellee HSBC Mortgage Services, Inc. ("HSBC") and others in federal bankruptcy court. That proceeding was dismissed without prejudice in 2006.

Later in 2006, Ms. Russell filed a complaint raising intentional misrepresentation, negligent misrepresentation, the Truth-in-Lending Act ("TILA"), the Tennessee Consumer Protection Act ("TCPA"), and common law fraud claims against HSBC in the Davidson County Circuit Court ("the circuit court").[1] The matter was consolidated with the appeal of a detainer warrant notifying Ms. Russell of HSBC's intent to take possession of the property. In August 2006, Ms. Russell was ordered to turn the property over to HSBC. The circuit court granted HSBC's motion for summary judgment as to all claims in an order deemed final in June 2008. On appeal, this Court affirmed only the dismissal of the TCPA claim, remanding the remaining claims for further proceedings. ***Russell I***, 2012 WL 2054388, at *5–7.

Upon remand, Ms. Russell amended her complaint, again raising claims for intentional misrepresentation, negligent misrepresentation, violation of the TILA, and common law fraud. In March 2013, HSBC filed an answer and a counterclaim alleging breach of contract and unjust enrichment. Ms. Russell answered the counterclaim. After time for discovery, HSBC moved for summary judgment on all of Ms. Russell's claims and its counterclaim. In October 2014, the circuit court granted HSBC's motion in full, finding no genuine issues of material fact. HSBC was awarded damages and attorney's fees. The Court of Appeals affirmed the summary dismissal of Ms. Russell's TILA claim and reversed as to her misrepresentation claims.[2] We vacated the grant of summary judgment on HSBC's counterclaim and the award of damages. ***Russell II***, 2016 WL 1588091, at *12–14.

The matter persisted for a while on remand. Shortly before trial, in October 2017, however, Ms. Russell voluntarily dismissed her claims. HSBC agreed to continue trial of its counterclaim indefinitely.

---

[1] Around this time, a second action was filed by Ms. Russell in the Davidson County Chancery Court, but that action was eventually consolidated with the circuit court matter prior to ***Russell II***. This is not to be confused with the 2018 complaint filed in the chancery court, discussed *infra*.

[2] The ***Russell II*** Opinion refers only to "Ms. Russell's claims for fraudulent or negligent misrepresentation" as "there is not a separate cause of action for intentional misrepresentation in Tennessee. . . . Rather, intentional misrepresentation is an element of fraud." ***PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.***, 387 S.W.3d 525, 547 (Tenn. Ct. App. 2012) (citation omitted).

The instant case was filed by Ms. Russell in the Davidson County Chancery Court ("the chancery court" or "the trial court") in 2018, against HSBC, an HSBC employee, HSBC's counsel Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson"), and several Baker Donelson attorneys and executives. The original complaint was 543 pages long. The chancery court granted the defendants' motion to strike the complaint in its entirety and ordered Ms. Russell to file a complaint in compliance with the Tennessee Rules of Civil Procedure.

Ms. Russell timely filed an amended complaint in February 2019. This complaint comprised 249 pages. Ms. Russell thereafter filed a motion for summary judgment, seeking a ruling in her favor. HSBC again moved to strike the complaint, and the remaining defendants moved to dismiss for failure to state a claim upon which relief could be granted. By order of May 21, 2019, the chancery court granted HSBC's motion to strike, in part. The chancery court provided extensive, explicit instructions as to which paragraphs and allegations were to be struck and ordered Ms. Russell to file a second amended complaint within thirty days. The other defendants were dismissed pursuant to their motion, leaving only HSBC. By the same order, the chancery court also denied Ms. Russell's April 2019 motion for summary judgment as (1) premature given the lack of proper complaint, service, and discovery; and (2) an attempt to relitigate the Court of Appeals' conclusion in *Russell II* that genuinely disputed facts existed.

In December 2019, Ms. Russell returned to the circuit court action, filing a motion for summary judgment that incorporated her earlier motion in the chancery court and asserted that HSBC lacked standing to bring the counterclaim against her. HSBC opposed the motion. In February 2020, the circuit court consolidated HSBC's counterclaim and Ms. Russell's motion for summary judgment with the ongoing matter in the chancery court.

When no second amended complaint had been filed as of June 16, 2020, the chancery court entered an order setting a new deadline of July 2, 2020. The order stated that failure to meet this new deadline would result in the dismissal of Ms. Russell's claims. After multiple extensions were granted, the deadline became July 30, 2020, and the chancery court again warned that failure to meet the extended deadline would result in dismissal of the case. Ms. Russell failed to file a second amended complaint, and the chancery court dismissed Ms. Russell's claims. The July 31, 2020 order recognized that only HSBC's counterclaim remained in dispute between the parties.

Ms. Russell thereafter filed a motion to strike, alter, or amend the chancery court's order dismissing her claims, which motion was denied by order of August 4, 2020. The dismissal order was designated as final pursuant to HSBC's motion on the same day. Ms. Russell appealed to this Court on August 27, 2020.

On September 24, 2020, Ms. Russell filed a notice in the chancery court setting a

hearing on her December 2019 motion for summary judgment. Pursuant to a request by HSBC, in October 2020, the chancery court stayed the matter pending resolution of the ongoing appeal. The stay did not completely deter the parties from continuing to litigate, however. Specifically, Ms. Russell filed a new motion for summary judgment as to HCBC's counterclaim in January 2021. HSBC opposed the motion in February 2021. The chancery court declined to grant summary judgment in March 2021. A status conference call was held in July 2021, after which the stay remained in place.

On appeal, Ms. Russell argued that the chancery court erred in dismissing Baker Donelson and in striking portions of her amended complaint. We affirmed the dismissal of the claims against Baker Donelson. We did not, however, reach the issue of whether the chancery court appropriately struck portions of Ms. Russell's amended complaint. Instead, we addressed the chancery court's independent basis for dismissing Ms. Russell's claims against HSBC: her failure to follow the court's orders. We concluded that the chancery court did not abuse its discretion in following through on its warning that a failure to file a second amended complaint would result in the dismissal of Ms. Russell's remaining claims. ***Russell III***, 2022 WL 17452481, at *2–4. As a result of ***Russell III***, all of Ms. Russell's claims were dismissed.[3]

In December 2022, HSBC informed the chancery court that a decision had been rendered in ***Russell III***.[4] A status hearing was originally set for January 17, 2023, and eventually rescheduled to February 21, 2023, pursuant to Ms. Russell's request.

Two orders were signed by the chancery court on March 2, 2023. One lifted the stay on proceedings, as the appeal in ***Russell III*** had been decided. The order stated that the only remaining matter was HSBC's counterclaim against Ms. Russell. The second order granted the voluntary dismissal of HSBC's counterclaim without prejudice, which HSBC had requested orally during the status hearing. The order stated that no other claims remained pending, such that the matter would be closed. All costs were taxed to Ms. Russell, except that costs related to HSBC's counterclaim were taxed to HSBC.

On March 24, 2023, Ms. Russell filed a documented entitled "Plaintiff's Exceeding Counterclaim." Therein, Ms. Russell referenced Tennessee Rule of Civil Procedure 13.03 as providing that a counterclaim may be filed seeking relief in a larger amount or a different

---

[3] An appearance of counsel for Ms. Russell was filed in the trial court in June 2021. No request to withdraw appears in the record, but by December 2022, Ms. Russell was again proceeding pro se.

[4] The chancery court's July 2020 order dealt only with the dismissal of Ms. Russell's amended complaint and was designated as final in August 2020 pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Thus, the chancery court maintained jurisdiction over HSBC's counterclaim while ***Russell III*** was before the Court of Appeals. *See **In re E.J.M.***, 259 S.W.3d 124, 135 (Tenn. Ct. App. 2007) ("[U]pon the filing of a notice of appeal, jurisdiction over the case attaches to the appellate court, and the trial court loses jurisdiction over the matter *that is the subject of the appeal*." (emphasis added) (citing ***First Am. Trust Co. v. Franklin-Murray Dev. Co.***, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001))).

form than that sought in the pleading of the opposing party. Ms. Russell asserted claims for fraud, defamation, abuse of process, and several criminal acts by HSBC. Ms. Russell sought compensatory and punitive damages, fees, and costs.

The same day, Ms. Russell filed a motion to alter or amend the two March 2 orders. First, Ms. Russell took issue with the chancery court conducting the February 2023 status conference prior to lifting the stay. Ms. Russell also took issue with HSBC's failure to file in writing either a notice of the resolution of *Russell III*, a request to lift the stay, or a motion seeking to voluntarily dismiss its counterclaim. By granting the voluntary dismissal concurrently with its lifting of the stay, Ms. Russell argued that the chancery court deprived her of fundamental due process rights, including the filing of her "Exceeding Counterclaim." Thus, Ms. Russell sought to remove the language that HSBC's counterclaim was the only remaining matter from the order lifting the stay. As to the order granting HSBC's voluntary dismissal, Ms. Russell similarly sought to remove the language that HSBC's counterclaim was the only remaining matter and the language that the matter was to be closed. Ms. Russell also requested to amend the chancery court's orders to reflect that she did not owe any costs or fees "to any one whatsoever." Although she seemed to take issue with the fact that the nonsuit was granted without prejudice and could therefore theoretically be refiled within one year, Ms. Russell did not seek to alter or amend the grant of the nonsuit itself.

The chancery court entered an order on April 27, 2023, partially granting Ms. Russell's motion to alter or amend. First, the chancery court amended the order granting HSBC's voluntary dismissal to reflect that "all court costs associated with Plaintiff's Complaint shall be taxed against the Plaintiff, and all court costs associated with Defendants' Counterclaim shall be taxed against Defendants."

In response to Ms. Russell's argument concerning the timing of the court lifting the stay, the chancery court also permitted the filing of Ms. Russell's "Exceeding Counterclaim." The chancery court, however, immediately addressed the merits of the document. The chancery court explained that, as no counterclaim had been filed by any Baker Donelson defendant, to the extent that the "Exceeding Counterclaim" sought any relief against Baker Donelson or its employees, it was dismissed with prejudice. As to HSBC, the chancery court found that Ms. Russell had no live cause of action after December 2022, when the dismissal of her complaint was affirmed by the appellate court. At that point, the only remaining claim was HSBC's counterclaim. The chancery court explained that "just as a defendant cannot file a Complaint to begin a case[,] a plaintiff cannot file a counterclaim to extend a case." Moreover, the "Exceeding Counterclaim" contained "no new information, rather it mostly repeat[ed] the contents of [Ms. Russell's] dismissed complaint and complain[ed] about [HSBC's] dismissed Counterclaim. Thus, Ms. Russell's "Exceeding Counterclaim" was "simply not proper." So the "Exceeding Counterclaim" was dismissed with prejudice in its entirety. The two March 2, 2023 orders remained as previously ordered other than the amended splitting of costs.

Ms. Russell filed notice of this instant appeal on May 11, 2023.[5] HSBC filed a motion to dismiss this appeal, which we "denied without prejudice to [HSBC] raising the same issues in its brief."

## II. ANALYSIS

We note that Ms. Russell is proceeding pro se in this appeal, as she has done for the majority of this litigation, and as such is granted "a certain amount of leeway in drafting [her] pleadings and briefs." **Young v. Barrow**, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citations omitted). We "measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers." *Id.* (citations omitted). Yet, "[p]ro se litigants must comply with the same substantive and procedural law to which represented parties must adhere." **Chiozza v. Chiozza**, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009). And unfortunately, there are several considerable barriers, both substantive and procedural, to an effective review of Ms. Russell's requests for relief. In its brief, HSBC contends that, even granting Ms. Russell appropriate latitude, the deficiencies in her appellate brief are fatal to her appeal. We agree.

It is clear that Ms. Russell is, to put it lightly, frustrated with everyone associated with this matter, including HSBC, various counsel, and at least three judges. Allegations of a vast array of unethical and illegal conduct are included in essentially every document Ms. Russell has filed. While we can appreciate the acrimony that might arise in roughly two decades of litigation, Ms. Russell has been informed on multiple occasions that these claims are not being made appropriately, or as to some complaints, in the correct forum. Indeed, the repetitive inclusion of almost two decades of grievances makes it difficult to discern the particular harm being complained of or the particular relief sought in any given pleading. This complexity is compounded by the fact that pleadings have been filed in both the circuit court and the chancery court under at least four separate case numbers, with multiple filings being made in one court while proceedings remained actively ongoing in the other. In truth, putting together even the bare-bones history of the case above was complicated by the sheer volume of the record, which, in turn, was certainly not aided by the numerous, repetitive pleadings filed by Ms. Russell that were then attached as exhibits to later filings. Even if the inclusion of these exhibits was necessary in the lower courts, "[s]uch repetition is unnecessary" when curating the appellate record. **Accredo Health Grp. Inc. v. GlaxoSmithKline LLC**, No. W2015-01970-COA-R9-CV, 2016 WL 4137953, at *5 (Tenn. Ct. App. Aug. 3, 2016) (faulting the parties' failure to "cull the record to omit needless or repetitive documents").[6]

---

[5] There has been some confusion regarding whether Baker Donelson is a party to this appeal, related to the outcome of **Russell III**, the chancery court's final order, and Ms. Russell's notice of appeal. Based on the disposition of this appeal, we need not address this issue.

[6] We note that "[t]he Tennessee Rules of Appellate Procedure governing the preparation of the appellate record assign duties to *both* the appellant and *appellee*." *Id.* at *6 n.12 (emphasis added). Thus,

Yet despite the complexity of this litigation, the most glaring of the various deficiencies in Ms. Russell's appellate brief is her failure to effectively cite to the record. *See* Tenn. R. App. P. 27(a). To be sure, Ms. Russell includes an appendix with her brief as contemplated by Rule 28 of the Tennessee Rule of Appellate Procedure. Although the preparation of an appendix is optional, Rule 28 states that such an appendix "*shall* contain: (1) any relevant portions of the pleadings, charge, findings or opinion; (2) the judgment, order or decision in question; and (3) any other parts of the record the appellant deems essential for the judges to read in order to determine the issues presented." Tenn. R. App. P. 28(a) (emphasis added). "Failure to follow the prescribed procedure of Rule 28 constitutes waiver." **State v. Scott**, No. E2020-01186-CCA-R3-CD, 2022 WL 414354, at *13 (Tenn. Crim. App. Feb. 11, 2022) (citing **State v. Hawk**, 688 S.W.2d 467, 471 (Tenn. Crim. App. 1985)).

The appendix here includes (1) the prior three appellate Opinions issued in the litigation between the parties; (2) excerpts from HSBC's brief to this Court in **Russell II**; (3) excerpts from Ms. Russell's opposition to HSBC's application for permission to appeal **Russell II** to the Tennessee Supreme Court and the denial of such permission; (4) a 2005 forensic document examination report and an October 2023 affidavit from Ms. Russell's expert witness; (5) a transcript of the 2017 deposition of HSBC's expert witness; (6) part of an HSBC brochure; and (7) HSBC's motion to dismiss this appeal and Ms. Russell's response in opposition. Notably absent from the appendix is the trial court's order from which Ms. Russell appealed, as required by Rule 28.[7] Additionally, the expert affidavit does not appear in the appellate record, violating another Rule 28 requirement. *See* **Scott**, 2022 WL 414354, at *13.

Moreover, the majority of the appended exhibits are not cited in Ms. Russell's brief. Ms. Russell initially directs us to the appended copies of our prior Opinions for "the best summaries of the relevant facts and law of the case history[.]" She directly cites **Russell II** four times and **Russell III** once. HSBC's motion to dismiss this appeal and Ms. Russell's response to that motion are each cited six times.[8] The remaining documents in the appendix are not referenced at all. *See* **Accredo Health Grp. Inc.**, 2016 WL 4137953, at *6 (cautioning litigations to "consider the implications of their decisions when creating the record on appeal" when faced with a record of over 3,000 pages and an appendix considering only 850 pages relevant to the issue on appeal).

Beyond those sparse citations to Ms. Russell's chosen documents is a single

---

HSBC shares somewhat in the failure to provide an appropriate record on appeal.

[7] This order is included in the appendix to Ms. Russell's reply brief. "Reply briefs, however, are generally not a vehicle to correct deficiencies in initial briefs." **Augustin v. Bradley Cnty. Sheriff's Off.**, 598 S.W.3d 220, 227 (Tenn. Ct. App. 2019) (citations omitted).

[8] Although the response itself is included in the appendix, the exhibits thereto appear to have inadvertently not been appended. It is to these exhibits that Ms. Russell primarily cites.

reference to a Notice to Begin Proceedings filed in the circuit court after the remand in ***Russell I***. Thus, Ms. Russell includes only eighteen, largely irrelevant, record citations in the entirety of her seventy-three-page brief, none of which are to the order at issue in this appeal. This clearly does not comply with the Tennessee Rules of Appellate Procedure and the Rules of the Court of Appeals, which set forth rules regarding appellate practice, specifically those related to the form and content of a party's brief.

Rule 27 of the Tennessee Rules of Appellate Procedure provides that the brief of an appellant shall contain the following:

> (1) A table of contents, with references to the pages in the brief;
> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
> (3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;
> (4) A statement of the issues presented for review;
> (5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;
> (6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;
> (7) An argument, which may be preceded by a summary of argument, setting forth:
>
> > (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
> > (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);
> (8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27(a). Rule 6 of the Rules of the Court of Appeals of Tennessee separately describes requirements for the content of an appellant's argument "in regard to each issue on appeal." Rule 6 requires:

> (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue . . . with citation to the record where the erroneous or corrective action is recorded.
> (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where

appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

Tenn. R. Ct. App. 6(a). Rule 6 further provides that:

No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. R. Ct. App. 6(b). Thus, a failure to comply with these rules may have significant consequences for appellate litigants.

And a failure to cite to the record is not the only deficiency found in Ms. Russell's brief.[9] For example, Ms. Russell lists forty-two issues on appeal. However, a majority of these issues involve allegations against the trial court and HSBC that date back to 2013 or otherwise relate to the 2016 **Russell II** Opinion. These claims are similar to those previously raised by Ms. Russell in numerous prior filings against HSBC. *See **Joshlin v. Halford***, 680 S.W.3d 187, 199 (Tenn. Ct. App. 2023) (noting that "under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal" (citation omitted)), *perm. app. denied* (Apr. 17, 2023). Pursuant to the trial court's involuntary dismissal of Ms. Russell's claims in 2020, these issues have been adjudicated on the merits, *see* Tenn. R. Civ. P. 41.02(3), a decision affirmed by this Court in **Russell III**. *See **Joshlin***, 680 S.W.3d at 199 (noting that "a court will generally refuse to reconsider an issue that has already been decided by the same court in the same case" (citation omitted)).

Ms. Russell's brief also does not contain an appropriate table of authorities. Beyond the cases involving these parties, Ms. Russell includes forty cases in her table of authorities. Twenty of those cases are not mentioned elsewhere in her brief. While the remaining twenty cases are primarily cited in Ms. Russell's statement of the standard of review, her table of authorities does not contain "references to the pages in the brief" where each authority actually used is cited. Tenn. R. App. P. 27(a)(2).

---

[9] We note, however, that Ms. Russell does include an appropriate table of contents as contemplated by Rule 27.

Ms. Russell's argument section does contain some citations to caselaw. However, these citations relate almost exclusively to Ms. Russell's argument that HSBC is not entitled to any relief pursuant to an unclean hands defense.[10] *See **Norman v. Norman***, No. M2015-02364-COA-R3-CV, 2017 WL 3705121, at \*5 (Tenn. Ct. App. Aug. 28, 2017) ("The doctrine of unclean hands is an equitable doctrine based on the principle that 'he who seeks equity must do equity.'" (quoting ***In re Est. of Boote***, 265 S.W.3d 402, 417 (Tenn. Ct. App. 2007))). As HSBC voluntarily dismissed its counterclaim, it was awarded no relief of any kind, rendering this argument moot. *See **Jacks v. City of Millington Bd. of Zoning Appeals***, 298 S.W.3d 163, 175 (Tenn. Ct. App. 2009) ("[A] case will generally be considered moot when the prevailing party will be provided no meaningful relief from a judgment in its favor." (quoting ***Cnty. of Shelby v. McWherter***, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996))).

Aside from her argument as to unclean hands, the only remaining argument Ms. Russell supports with caselaw relates to the trial court's alleged failure to enforce the statement in ***Russell II*** that HSBC would need to prove its status as a holder in due course. But all of Ms. Russell's claims were dismissed on procedural grounds and that dismissal was affirmed in ***Russell III***. As such, this issue is similarly moot and not at issue in this appeal. *See **id.***

Furthermore, despite her many assignments of error, Ms. Russell does not include any discussion of the trial court's final decision—the dismissal of both HSBC's counterclaim and Ms. Russell's "Exceeding Counterclaim"—in her brief. Certainly, Ms. Russell takes issue with the timing of the trial court lifting the stay on proceedings, in relation to its effect on her ability to file her "Exceeding Counterclaim."[11] However, the trial court granted Ms. Russell's motion to alter or amend, allowing her "Exceeding Counterclaim" to be filed. The trial court then discussed the merits of the document prior to dismissing it on both procedural and substantive grounds. Ms. Russell provides no argument, supported by legal citation or otherwise, that this was not an acceptable procedure to employ under the circumstances. Nor does Ms. Russell provide any cogent argument that the trial court's ruling as to the merits of her "Exceeding Counterclaim" was in error. We have repeatedly held that an appellant's failure to craft a more-than-skeletal argument that is actually responsive to the trial court's ruling may result in waiver on appeal.[12] *See **McNeill v. Blount Mem'l Hosp. Inc.***, No. E2022-00209-COA-R3-CV, 2022

---

[10] Several cases included as support for this argument are not contained in the table of authorities.

[11] We note that a pleading such as Ms. Russell's "Exceeding Counterclaim" is not contemplated by the Tennessee Rules of Civil Procedure. It is true that Tennessee Rule of Civil Procedure 13.03 permits a counterclaim to "claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party." However, outside of third-party pleadings not relevant here, Rule 7.01 anticipates only that "[t]here shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; [and] an answer to a cross-claim, if the answer contains a cross-claim[.] No other pleading shall be allowed, except that the court may order a reply to an answer[.]."

[12] Although reply briefs generally may not be used to correct deficiencies in principal briefs,

WL 16955177, at \*7 (Tenn. Ct. App. Nov. 16, 2022) (holding that an argument was subject to waiver when the appellant's "brief contain[ed] no argument that addresse[d] the actual basis for the trial court's grant of summary judgment"); *Payne v. Bradley*, No. M2019-01453-COA-R3-CV, 2021 WL 754860, at \*7–8 (Tenn. Ct. App. Feb. 26, 2021) (holding that the appellant's argument was waived where the appellant provided "only a skeletal argument actually addressing the very foundation of the trial court's ruling against her" and therefore had "not properly appealed the dispositive issue in this appeal"); *Augustin*, 598 S.W.3d at 226–27 ("Appellant's initial brief contains no properly supported argument responsive to the trial court's dispositive ruling in this case. This failure would generally result in a waiver on appeal.").

We recognize that Ms. Russell is proceeding pro se in this appeal and therefore may not be fluent in the Rules of this Court. However, it is well settled that, "[w]hile a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, '[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts.'" *Chiozza*, 315 S.W.3d at 487 (first citing *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000); and then quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)). And again, pro se litigants are bound by the same substantive and procedural rules as represented parties.[13] *Id.* (citing *Hodges*, 43 S.W.3d at 920–21); *see also Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) ("*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden.").

This Court has previously held that "profound deficiencies [like those found in Ms. Russell's brief] render[] appellate review impracticable, if not impossible." *Owen v. Long Tire, LLC*, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at \*4 (Tenn. Ct. App. Dec. 22, 2011) (citing *Missionary Ridge Baptist Church v. Tidwell*, No. 89-356-II, 1990 WL 94707, \*2 (Tenn. Ct. App. July 11, 1990) (refusing to rely on the brief of the appellant because it did not contain references to the record either in the statement of facts or the argument section of its brief)). We are not responsible for "scouring the appellate record for any reversible error the trial court may have committed." *Id.*; *see also Mabry v. Mabry*, No. 03A01-9106CH207, 1992 WL 24995, at \*1 (Tenn. Ct. App. Feb. 14, 1992) ("It is not incumbent upon this Court to sift through the record in order to find proof to substantiate the factual allegations of the parties."). And "[c]ourts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) (listing cases).

---

*Augustin*, 598 S.W.3d at 227, Ms. Russell does not attempt to better comply with the briefing requirements in her reply brief, despite HSBC's argument that the deficiencies should prove fatal to her appeal.

[13] In this vein, Ms. Russell argues in her reply brief that HSBC's brief should be struck for containing more than 5,000 words. However, a party's principal brief is limited to 15,000 words according to Rule 30 of the Tennessee Rule of Appellate Procedure, a limitation with which HSBC complies.

While we acknowledge that this Court has discretion under Rule 2 of the Tennessee Rules of Appellate Procedure[14] to waive the express briefing requirements for good cause, we decline to exercise our discretion in this case. "[T]he Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court." *Bean*, 40 S.W.3d at 54–55 (citing *Crowe v. Birmingham & N.W. Ry. Co.*, 156 Tenn. 349, 1 S.W.2d 781 (Tenn. 1928)). Ms. Russell simply cannot leave it to us to interpret, support, and then consider any argument she might have intended to raise. *Lacy v. Big Lots Stores, Inc.*, No. M2019-00419-COA-R3-CV, 2023 WL 163974, at *3 (Tenn. Ct. App. Jan. 12, 2023) ("We have no duty 'to verify unsupported allegations in a party's brief or to research and construct the party's argument.'" (quoting *Chiozza*, 315 S.W.3d at 489)). This is at least the fourth attempt at seeking redress between these parties; as no operative complaints remain, it is perhaps time for the matter to rest. Given Ms. Russell's failure to comply with Rules 27 and 28 of the Tennessee Rules of Appellate Procedure and Rule 6 of the Rules of the Court of Appeals of Tennessee, we decline to address the merits of this appeal. *See Bean*, 40 S.W.3d at 55; *Chiozza*, 315 S.W.3d at 492. Accordingly, this appeal is dismissed and all other issues are pretermitted.

## III. CONCLUSION

Based on the foregoing, we dismiss this appeal and remand this cause to the trial court for all further proceedings necessary and consistent with this Opinion. Costs are assessed to Appellant Deborah Russell, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[14] That rule provides, in relevant part:

> For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion[.]

Tenn. R. App. P. 2 (listing exceptions not at issue here).